RICHARD HOPKINS et al., Appellants, v. BOARD OF SUPERVISORS OF BOONE COUNTY et al., Appellees.

DRAINS: Assessments—Objections by Owner Available to Grantee. Objections to a special assessment for a public drainage improvement, duly filed by the owner of the land, are available to a subsequent grantee who became such *after* the objections were filed and *before* they were passed upon by the board of supervisors.

DRAINS: Establishment—New District to Rectify Outlet—Basis for Assessment. When, in order to rectify the inadequacy of the outlet of an existing drainage district, a new district is organized (Sec. 1989-a25, Code Supp., 1913), consisting of the lands within the original district and added lands, but the *entire* expense is employed in the added territory, the assessment on the lands within the original district must be computed on the basis of benefits acquired by the furnishing of said lands with an adequate outlet; and an appeal from an assessment on said latter lands must be dismissed when the record contains no data from which said benefits may be determined.

DRAINS: Assessments—Unallowable Basis. An assessment for a drainage improvement is unallowable when computed on a basis which would entirely free certain lands from any and all expense in caring for waters which are a *natural* burden thereon.

Headnote 1:  19 C. J. p. 738 (Anno.)  Headnote 2:  19 C. J. pp. 731 (Anno.), 743.  Headnote 3:  19 C. J. p. 732.

*Appeal from Boone District Court.*—H. E. FRY, Judge.

JUNE 25, 1925.

REHEARING DENIED SEPTEMBER 25, 1925.

PLAINTIFF appeals from the action of the defendant board of supervisors in overruling his objections to a proposed assessment against lands in a certain drainage district in Boone County, Iowa. The district court reduced the assessment, and the plaintiff again appealed from the action of the district court in refusing to further reduce the assessment.—*Affirmed.*

*T. J. Mahoney* and *F. L. Mackey,* for appellants.

*Dyer, Jordan & Dyer,* for appellees.

ALBERT, J.—We are met with a question of practice, at the threshold of the case, of which we must first dispose.

The land in controversy was owned by one John Hopkins, at the time notice was given of the proposed assessment, and he filed objection thereto. Before the action of the board of supervisors on the objection so filed by him, he sold

1. DRAINS: assessments: objections by owner available to grantee.

and conveyed said land to the plaintiffs herein; so that, at the time the assessment was finally levied by the board, John Hopkins was not the owner of the land, but the plaintiffs herein were such owners. They made and served the proper notice of appeal, and duly perfected their appeal to the district court. Defendants insisted below, and also here, that there was no appeal to be considered, because the appellants here never filed any objections to the proposed assessment, and therefore were not in a position to appeal. We are disposed, however, to hold that, when the real owner of the land did file objection with the board, his conveyance of the land before the action of the board on those objections does not call upon the purchasers to refile or to make further objection in their own name. Whatever rights John Hopkins had under his objections filed, when he conveyed the fee-simple title to the appellants herein they became subrogated or substituted in his place instead; and all the rights that he had would inure to their benefit; and they, being the real par-

ties in interest, thenceforward had the right to appeal from the action of the board in overruling the objections. We therefore hold against the contention of the board on this question.

It appears from the record herein that, in 1905, certain lands, consisting of something over 500 acres in Boone County, Iowa, were established into what is referred to in the record

2. DRAINS: establishment: new district to rectify outlet: basis for assessment.

as Drainage District No. 17. The improvement was constructed therein as planned, assessments made, and the same paid for. The improvement at the outlet became obstructed, and the open ditch into which it emptied filled with silt and debris, until the bottom of the open ditch was higher than the top of the outlet. This condition was brought about by reason of the flat grade both immediately above and below the outlet of the tile in said Drainage District No. 17. In order to relieve this situation, a petition was filed with the board, which resulted in adding to said district, below the outlet, some 1,100 acres of land; and in the construction of the new part, additional improvements were made, at a cost of approximately $64,000. In the usual course of events, commissions were appointed, to make an assessment to pay for these new improvements. They returned assessment against the plaintiffs' quarter section of land, as follows: Proposed assessment against the northwest 40, $845; against the northeast 40, $1,514; against the southwest 40, $4,700; against the southeast 40, $2,868. To this proposed assessment the plaintiffs duly filed objection. The assessment as reported was confirmed by the board, and the plaintiffs, in due time, appealed to the district court. The district court reduced plaintiffs'. assessment as follows: Against the northwest 40, from $845 to $780; against the northeast 40, from $1,514 to $1,400; against the southeast 40, from $2,868 to $2,640; against the southwest 40, from $4,700 to $4,325. From the judgment thus entered, the plaintiffs appealed.

There seems to be some dispute between counsel as to just what the status of this territory was and is. It is contended, on the one hand, that this proceeding was simply an extension of the outlet, to relieve original Drainage District No. 17. Again, it is contended that it amounts only to the establishment of a new drainage district, commencing at the south line of original

Drainage District No. 17; and it is again thought that it amounts, or that it is in fact, the creation of an entirely new drainage district, consisting of the lands in Drainage District No. 17 and the lands on the south thereof. We hold that, under the record herein, and the statute as it existed at the time this action was taken, it amounted to an original proceeding, to establish a new drainage district. See Section 1989-a25, 1913 Supplement to the Code.

It is conceded, or at least satisfactorily established in the record, that, of the total cost of this improvement, $64,000, $8,000 was charged against the lands lying in original District No. 17, and the balance of the cost was charged to the added territory. The appellants' lands lie within the added territory, and their complaint in relation thereto is that a larger amount of the cost than $8,000 should have been taxed to the lands lying in original No. 17, thus reducing the amount that the added territory would be called upon to pay, and thereby reducing the amount that would be assessed against their land. This is the burden of their contention.

We have heretofore stated the condition of the outlet of the original No. 17. In the proposed plan adopted by the board in this late proceeding, it was proposed to lower 3,500 feet of tile leading to the outlet of said Drainage District No. 17. This, however, was not done; hence no actual work was done in this improvement within the boundaries of what was originally Drainage District No. 17. All of the work was done and money expended in the additional territory. A main tile drain was constructed from the outlet at the south end of the district through the added territory to the point where the tile drain in the original District No. 17 ended. At that point the new tile was 3½ feet below the mouth of the old tile.

The engineer who was on the commission making the assessment on this new district testified that they made it identically the same as though there never had been a drainage district there. They did not take into consideration the proportion of water that came from the original District No. 17 through the new tile drain, the cost of carrying the water of original District No. 17, or the size of the tile required at the lower end to take care of the water from No. 17. They did not take into consid-

eration the factor of proximity to the outlet at the lower or the upper end. Neither did they give the lands in original No. 17 any credit for the improvement already made. The question raised here must be determined under the law in force at that time, to wit, Section 1989-a25, Supplement to the Code, 1913.

The equitable rule for the distribution of the costs of this new improvement, under the peculiar facts in this case, would be to charge to the territory within the original District No. 17 the benefits that come to it by the new district's furnishing adequate outlet which it did not possess before this new improvement. This would be true in the instant case because of the fact that no work was done or money expended in what was original District No. 17, and all the benefits that could come to it would be the furnishing of such outlet. We have searched the record in vain for any basis whatever by which this could be determined. The board fixed it at approximately $8,000; the district court fixed it at approximately $13,000. The board did not appeal from the action of the district court, and we are now asked to increase this lump sum charged against the territory in the old district to $22,000, thereby reducing the assessment against the plaintiffs' land.

The theory of the appellants is that it would have cost the new territory, had it been made into a drainage district by itself, and the water from original Drainage District No. 17 been cut off, $22,000 less than it did cost; and that, therefore, this $22,000 should be the amount chargeable to the lands in original Drainage District No. 17. This amount is determined by the engineer by estimating the increase in the size of tile and the amount of excavation necessary by reason of taking care of the water from the outlet of No. 17. It takes but a moment's reflection to see that this is not a fair basis of computation. It loses sight of the fact that the water that did flow from the outlet of No. 17 was a burden on the servient estate which it was bound to take in the first instance, and, since it was burdened with this duty, it is not just to charge the original drainage district in this calculation for a burden which the servient estate carried before its establishment into a drainage district.

3. DRAINS: assessments: unallowable basis.

The above estimate made by the engineer is the only evidence in the case that in any way touches this proposition. We feel that this method of calculation is faulty, and is of no aid to us in determining whether or not the assessment of the appellant should be further reduced. Being without evidence on which to base an opinion, we can proceed no further in the case.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.